May I please the court, Travis Davison for the appellant Pernell Saulsberry. I'd like The main issue in this case deals with Mr. Saulsberry's race discrimination claim. The district court ruled that Mr. Saulsberry could not show that he experienced an adverse employment action. We disagree with this assessment. The probationary period that he was put on from the June 7, 2010 warning letter was not just a higher level of scrutiny as the district court said. During his probationary period, Mr. Saulsberry could not apply for other positions in FedEx. He was already having trouble in the department he was in, so he wanted to apply for other positions. He was not allowed to do so because of this warning letter he received for supposedly not wearing a seat belt. The warning letter itself is suspicious as it came almost a month after this supposed violation happened. Did he lose anything from the warning letter? What were the concrete consequences of that? He wouldn't be allowed to be promoted. He wouldn't be allowed to change departments or even apply to change departments. I think I get that, but I'm just saying was there an actual request for a promotion that was denied because of that? What does the record show about the consequences of that warning letter? There was no request because Mr. Saulsberry testified that he knew that he could not apply for any positions during that time. It's FedEx policy that he would not be able to apply for other positions. Is he saying in his deposition that that therefore is why he didn't apply for any promotions during the period? I believe so, but I can't cite to that. If you're correct about that, if Saulsberry is correct that it was an adverse employment action, moving to the next step, how was he treated differently from any identified similarly situated employees? The other two that I think you point to were involved in accidents of unexplained complexity. They were given warning letters, right? No, they were not given... It was a different, what did they call the document? Counseling. Caution or counseling. FedEx admits that a counseling is not considered discipline. But not wearing a seatbelt is a volitional act of, I won't call it evil, but of some malfeasance. Getting into an accident, is there something that says if you get into an accident it is just as bad as something else? I didn't think so. Well, they stated these were preventable accidents, so at least it was negligence on the people who received those counselings. I would submit that a preventable accident is a higher violation, a worse violation than Mr. Saulsberry sitting on... Did it say preventable by that person? It said preventable by FedEx. But FedEx is the employer, they're the ones that rank these things in terms of significance, and what business is it of the court to supervise their ranking of dangerousness, seriousness, or significance? This isn't the personnel department that we're talking to here, this is... I understand that, Your Honor. They didn't have to, FedEx didn't have to give Mr. Saulsberry a warning letter for sitting on the forklift without his seatbelt on. They could have given him lesser discipline. They could have given the other individuals higher discipline. The minimum discipline imposed on the Caucasian employees was imposed. For Mr. Saulsberry, they decided to raise this to a higher standard and give him actual discipline. If you want to invite the court to get into the HR and discipline process, I would observe stepping into that arena, which I don't think we should do, frankly, but stepping in nonetheless, I would observe that not wearing a seatbelt and operating a forklift is a heck of a dangerous thing to do. Just based on cases that I've reviewed in my court where forklift operators had a mishap, fell under the forklift, or flipped it backwards, were ejected, injured, sued the employer for providing them a forklift without sufficient safety devices, and the company says, well, you had a seatbelt, you should have worn it. These kinds of forklift accidents can be extremely serious, whereas vehicular fender benders are fairly commonly encountered, probably on my drive to court every morning on the expressway of one kind or another. I mean, that's something that sort of happens with some regularity. Forklift accidents, when they occur, are huge. Those are extremely dangerous machines. You really need to be restrained sitting. Now, that's if I were to venture in, as you suggest, and second guess the HR department, I'd be inclined to say, yeah, right on. I would agree that forklift accidents are very dangerous, Your Honor. However, Mr. Salisbury, in his deposition, testified that he was not driving the forklift when this happened. He was sitting on the forklift after operating it, and he didn't have his seatbelt on then. I understand this court is not a super-personnel department or HR department, but I would submit that these two Caucasian employees at least engaged in a similar act or an act that was of the same consequence that Mr. Salisbury was, and received much less discipline than he did. Verbal counseling is just simply a note within the PRISM system, which is the personnel system at FedEx. This, again, probationary period, prevented him from applying to other jobs, getting a promotion, getting a pay raise. Now, he did keep his benefits. He did keep the same pay, but as the district court even points out, there's several cases pointed out on page 11 of the district court's brief or memorandum, the magistrate's memorandum, that says that write-ups or probationary periods can constitute an adverse employment action when they affect promotion and pay raises. This is exactly what happened in Mr. Salisbury's case. They say that it was just a higher level of scrutiny, but that's not the case. The higher level of scrutiny would have been on the Caucasian employees, not Mr. Salisbury. So, I would submit that an adverse employment action did take place, and looking at the evidence and the like, most favorable to Mr. Salisbury, that's an issue that should have gone to trial. As far as the FMLA claims, there was a document submitted with Mr. Salisbury's hours, his time in service with FedEx. That was excluded. I would argue that that should have been... What did that document look like in terms of trying to lay a foundation for it and explain where it came from and certify that this is what really happened? Yeah, Your Honor, honestly, that was not done properly. That should have been authenticated and put into the record. Doesn't that distinguish this situation from some of the other cases where people have let this in? I mean, isn't it fair game to say, well, if you're not even going to give us any foundational information, we just can't consider that a summary judgment? I would probably agree with that, Your Honor. I don't think the court was totally wrong in excluding that. I think it could have been considered as far as a business record exception. FedEx didn't deny that it was a business record at any point, and it was produced by FedEx. Now, should we have at least had some testimony saying what it was and how it helps with this? Yes, absolutely. I would submit it should have been considered because it could have been admitted at trial through testimony. Thank you, counsel. You'll have your time for rebuttal. You may proceed. Good morning, Your Honors. I'm Elizabeth Lowe, and I represent Federal Express Corporation. Mr. Salisbury has been employed with FedEx since 1985, and as we stand here today, he's still employed with FedEx. And he has brought five issues to the attention of this court, and I'm going to begin first with the hearsay issue that's related to his FMLA interference claims. And then I'll address the four issues that are related to his race discrimination claims. But with respect to his Title VII and Tennessee Human Rights Act claims, there is just no evidence in the record that any decision that was made by FedEx was motivated by race. Therefore, irrespective of this court's decision on whether Mr. Salisbury was subjected to an adverse employment action, on whether Mr. Salisbury was classified as a DOT handler, and whether the district court abused its discretion in denying the request for additional discovery, regardless of those decisions, Mr. Salisbury cannot prevail on his race discrimination claims due to the lack of race motivation evidence in the record. Turning to the hearsay issue, one thing I wanted to correct that Mr. Davison mentioned, he said that the hearsay document was produced by FedEx. Just to be clear, that document was not produced by FedEx in the discovery, but he may have been trying to say that it appears that it was produced by FedEx off of a FedEx system. Generated by FedEx. Generated. Thank you, Judge Cleveland. Generated. But, irregardless, this document does not establish that Mr. Salisbury worked the 1,250 hours required under the FMLA. This document purports to indicate that he was paid for 1,257.29 hours, but he admits that this time included vacation and holiday hours, and he admits that he didn't work on vacation and holiday hours. And vacation and holiday does not qualify under the FMLA as time worked. Specifically, the reg, the FMLA reg 29 CFR 825.110C1 indicates that the determining factor is the number of hours worked. And then it refers specifically to the FLSA to define the number of hours worked. So your argument is that the FMLA standard is 1,250. He was paid for barely over that, right? You said 1,257.29? Yes. Do I take it probably that FedEx tries to keep people under 1,250 for various reasons, or does he just happen to accidentally come in a bit under it? Well, no, Your Honor. FedEx does not try to keep employees under certain hours for certain reasons. It turns out that Mr. Salisbury is a part-time employee, and so as a part-time employee, I believe that part-time employees don't work sufficient hours to get to the 1,250 standard, Your Honor. That's what I meant. Okay. And since the FMLA directs us to the FLSA to determine the definition of hours worked, the FLSA indicates in the definition of regular rate that vacation and holiday time is not considered time worked. Moreover, this report indicates the total hours worked was 1,109.29, and in addition, this report, this hearsay report, was generated as of the run date says January 24, 2011. And the date of the request for FMLA leave was January 20, 2011. Therefore, this report is not relevant to the determination of the 12 rolling months prior to the date of the request. So therefore, this report, even if this Court decided that it is not hearsay, this report does not show that Mr. Salisbury was eligible for FMLA leave. Turning now to Mr. Salisbury's issue with respect to the warning letter, this warning letter was not an adverse employment action because Mr. Salisbury admits that he was not wearing a seat belt. He admits that he violated the policy. Yeah, but I mean, that just goes to whether it was justified. I don't know whether that goes to whether it's an adverse employment action. I mean, if you just were randomly giving out warning letters to people based on race, wouldn't that be an adverse employment action? Absolutely. You're right, Your Honor, and it does go to whether it was justified. But he admits that his job title, his responsibility, his pay, and his benefits were not affected, and therefore, it's not an adverse employment action. He says that he knew FedEx policy with the warning letter in the file. There was no point seeking a promotion because you automatically wouldn't get it. But he does not present any specific evidence to show that there was any potential job that he was going to apply for. But he said he said that in his deposition. He did not say. He did not identify. There's no evidence of any specific job in the record that he was trying to apply for. I don't know if this is true, but if it is true that if you've got one of these warning letters, you can't seek a promotion and have any hope of getting it. Why should he have to then identify the job for which he would have applied? I mean, if that set of premises is true, isn't he allowed to just say, well, no, of course I didn't seek anything out. I knew I wouldn't get it. Well, Your Honor, that would be speculative that he wouldn't have gotten it. And in addition, the warning letters, the warning letter. The record shows he's wrong about that. You can get promotions after a warning letter. The record doesn't show that he's wrong or right about it because he hasn't. There is no evidence in the record of any type of job opportunity that he wanted or was available to him had he not been subject to this limitation. But the limitation was actually limited in time to just 12 months. The debate we're having now, it doesn't matter if you're right about similarly situated. Am I right about that? Come again, Your Honor? The debate we're having right now wouldn't matter to the outcome of this case if your position is correct on the similarly situated point. Exactly, Your Honor. This debate, it doesn't matter. Regardless of this court's determination on whether that was an adverse employment action, Mr. Salisbury cannot show that there is any inference of race discrimination in this case because of the similarly situated matter. As you were discussing with Mr. Davison, the potential comparator received a counseling because he had a vehicle accident. And that is handled at FedEx under the vehicle accidents policy. And under the vehicle accidents policy, there's a policy of progressive discipline is what I was reaching for. There's a progressive discipline policy. And if there is only one accident in the last 12 months, it begins with just a counseling. And then if you have subsequent accidents, the progressive discipline increases from there. However, Mr. Salisbury argues that he did not receive the lowest possible discipline now for his seat belt violation, which is a safety violation at FedEx. And the seat belt safety violation is actually handled under a separate policy. It's handled under the acceptable conduct policy. And in fact, Mr. Salisbury was, this was his second violation. He previously was caught not wearing a seat belt. And he admits that Mr. Dean Mudd, the senior manager at that station, saw him not wearing his seat belt and gestured to him to buckle up. So this was not his only first violation. So he's not similar situated to Mr. Holland in that respect. They were two separate policies. They were separate types of violations. Furthermore, Mr. Holland, who was the white comparator, he actually was disciplined under the same policy that Mr. Salisbury was disciplined under. So Mr. Holland violated the safety policy or the acceptable conduct policy when he had a serious safety violation. He was caught crossing a moving belt during the sort operation, which is a dangerous safety issue. And he also received a warning letter. So he, in fact, had equal treatment to Mr. Salisbury when the conduct or misconduct was equivalent. Furthermore, Mr. Salisbury cannot show pretext in this case because he has admitted the underlying conduct. Therefore, that warning letter is not race discrimination. Mr. Salisbury also brings to light or his other issue is that his hostile work environment claim was based upon his temporary return to work assignment. During this temporary return to work assignment, FedEx assigned Mr. Salisbury to load and unload packages from trucks rather than operating the forklift as he had been doing previously because Mr. Salisbury had vertigo. Mr. Salisbury admits that his vertigo presents no warning signs and there are no preventive measures. And as an inherent, due to the inherent safety risks of operating heavy machinery like the forklift, as Judge Cleland referred to earlier, FedEx simply reassigned him for a limited amount of time, about 60 days, to load and unload packages because he was disqualified from driving but also because of just simple safety reasons. This limited reassignment to load and unload packages was not discrimination, was not based on his race because Mr. Salisbury admits that all handlers, black and white, are responsible for loading and unloading packages. Mr. Salisbury also argues that he is not classified as a DOT handler. However, Mr. Salisbury admits that he does perform the duties of a DOT handler at FedEx. He admits that he subjected himself to the medical examination required of the DOT handler and he simply speculates that he should have received an offer letter in order to be classified as a DOT handler. However, he provides no evidence of such a policy at FedEx. This issue is not a material issue. It just doesn't change the outcome because he did have vertigo and that's not disputed. Finally, Mr. Salisbury brings forth an issue regarding his request for additional discovery. He requested two additional depositions in response to the motion for summary judgment. The district court simply did not abuse its discretion by denying that request because Mr. Salisbury was previously granted an extension of time to take two depositions earlier and he failed to take the depositions at that time. Any other questions? Thank you, counsel. Thank you. You have four minutes for rebuttal. Thank you. I would like to address one other action that was taken against Mr. Salisbury as far as the light duty he was supposedly put on. When Mr. Salisbury started having trouble with vertigo, he applied for FMLA leave and then was put on this TRW light duty without his knowledge. Now, when he was put on this, he was put in a more strenuous position than he was already in. Instead of driving forklifts around, he was now unloading packages all day. That, to me, also goes to FedEx taking adverse action against Mr. Salisbury. Is there any indication that that is more subject to vertigo? I mean, I take it from a simple-minded view that somebody with vertigo who's driving something around can be very dangerous, whereas if he's simply unloading packages, he can sit down if he gets a little dizzy. I don't know that any evidence… The point is not weakness of muscles, in which case if he were doing something more strenuous, that would seem discriminatory, but it seems like a move that's directly related to his condition. What do you have to the contrary? Well, he says in his affidavit that he was aware of a Caucasian employee that got put in a check-in room in an office all day, essentially. Who also had vertigo? Another employee that was on this TRW. I don't know. The TRW could be for any number of types of physical or other conditions, right? That's true. As far as the vertigo issue, yes, he could be more of a danger to FedEx driving a forklift with vertigo. Well, to human beings who work for FedEx, it's not a corporation that gets run over. Right. Your point is taken, Your Honor. And really, as far as the deposition request, I don't know that they were entirely necessary, but we had depositions of these comparators scheduled for May 23rd with opposing counsel. We had a status conference on May 21st in front of the district court judge. He wanted us to try to resolve this case. We did try to resolve it. We went to a mediation on June 27th. It was unsuccessful. Oh, let me go back. We canceled the deposition set for May 23rd in light of the status conference. We go to mediation. We're unsuccessful. They file their summary judgment. That's when the request for the Rule 56D request came in. Now, this evidence could have helped, I believe, answer some of these questions as far as what condition did Mr. Hogan have who was also put on TRW. That could be helpful. And we were also going to take Mr. Morell's deposition who was also a comparator. None of those depositions could have changed the objectively observable fact that they were handled under a different policy scheme, could it? That's true. They were handled. Mr. Salisbury's violation was handled under the acceptable conduct policy. That is a very broad policy. Very broad. FedEx can discipline you for almost anything. My time's up. Almost anything under that policy. Any other questions, colleagues? Thank you, counsel. Time's expired. The case will be submitted. Clerk may call the next case.